IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ROBERT LEE WILLIAMS IV,
0-753945,

       Petitioner,

vs.                                    CASE NO.   4:03cv264-SPM/AK

JAMES R. McDONOUGH[1], as
Secretary, Florida Department of
Corrections, State of Florida,

       Respondent.
_____/

## ORDER

THIS CAUSE comes before the Court for consideration of the magistrate judge's report and recommendation dated January 25, 2006 (doc. 8). In the report and recommendation, the magistrate judge concludes that Petitioner is not entitled to relief on his § 2254 claim that his trial attorney was ineffective for failing to properly challenge blood alcohol evidence. On Petitioner's other claim that his attorney was ineffective for failing to advise the trial judge of contact between a juror and a member of Petitioner's family, the magistrate judge

---

[1] James R. McDonough succeeded James V. Crosby as Secretary of the Florida Department of Corrections, State of Florida, and is automatically substituted as the respondent. Fed. R. Civ. P. 25(d)(1).

concludes that Petitioner is entitled to relief.  The parties have been furnished a copy of the report and recommendation.  Each side has filed objections (docs. 9 and 10).

   1.   **Blood Alcohol Evidence**

Petitioner contends that his convictions for DUI manslaughter and DUI with serious bodily injury should be vacated because his trial attorney was ineffective for failing to properly challenge blood alcohol evidence on grounds that the blood sample was improperly preserved.  Petitioner is not entitled to relief on this ground.

At the time of Petitioner's trial in October 1997, a blood alcohol test could be admitted into evidence through either a common law method or through the implied consent statute.  Robertson v. State, 604 So. 2d 783, 789, 791 (Fla. 1992).  Under the common law method, a blood alcohol test could be admitted "'if a proper predicate established that (1) the test was reliable, (2) the test was performed by a qualified operator with the proper equipment and (3) expert testimony was presented concerning the meaning of the test.'"  Id. (quoting State v. Bender, 382 So. 2d 697, 699 (Fla. 1980).  Through the implied consent statute, a blood alcohol test was presumptively admissible and a presumption of impairment was applied if the test was performed in compliance with the implied consent law and the implementing administrative rule.  Bender, 382 So. 2d at 699; Robertson, 604 So. 2d at 789.

Page 3 of 12

Ordinarily, attorneys challenging blood alcohol tests focused their arguments on noncompliance with the rule.  See State v. Miles, 775 So. 2d 950, 954 n.4 (Fla. 2000) ("[T]his case is different from many others in that the adequacy of the rule itself was challenged at trial, as opposed to noncompliance with a rule").  In November of 2000, however, the Florida Supreme Court changed the law when it held in State v. Miles that a blood alcohol test would not be admissible under the implied consent statute despite compliance with the rule because the rule did not ensure for proper preservation of blood samples.  Miles, 775 So. 2d at 995.

Petitioner now argues that his trial attorney was ineffective in October of 1997 for failing to make what at that time would have been a novel argument that, regardless of compliance with the rule, his blood alcohol test result was inadmissible because his blood sample was not properly preserved.  The argument goes beyond compliance with the rule and challenges the adequacy of the rule itself to ensure preservation of blood samples.

In October 1997, there was no binding precedent to support the argument.  The earliest case that Petitioner can cite is a trial court's non-binding[2] decision in State v. Miles, which was issued in August of 1997.  The decision was later appealed to the Florida First District Court of Appeal and then to the Florida

---

[2] Decisions of trial courts in Florida are not binding upon sister trial courts. State v. Bember, 592 So. 2d 1129, 1132 (Fla. 2d Dist Ct. App. 1991) (trial court rulings are not precedent "even in the adjacent courtroom").

Supreme Court. The appellate opinions in Miles were issued after Petitioner's trial. See State v. Miles, 732 So. 2d 350 (Fla. 1st Dist. Ct. App. 1999); State v. Miles, 775 So. 2d 950 (2000). Given the timing of the opinions, Petitioner's trial attorney cannot be faulted for failing to make a Miles-type claim.

In evaluating counsel's performance, "every effort [must] be made to eliminate the distorting effects of hindsight . . . [and] a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984). Accordingly, failure to anticipate a change in the law does not constitute ineffective assistance of counsel, even if the change is reasonably foreseeable. United States v. Ardley, 273 F.3d 991, 993-94 (11th Cir. 2001). Since Petitioner bases his ineffective assistance of counsel claim on his trial attorney's failure to anticipate a change in law, his claim must be denied.

Assuming Petitioner could make a valid argument that his trial attorney should have raised a Miles-type issue, his position is further complicated by the appellate decisions in State v. Miles concerning the admissibility of blood test results and the applicability of the presumption of impairment. In Miles the Florida Supreme Court noted that the blood alcohol test result was not being suppressed despite the deficiency of the administrative rule. Miles, 775 So. 2d at 951. Instead, "the State would be permitted to present the results of its testing of the blood sample and the parties would be allowed to establish the

circumstances surround the preservation, storage, and transportation of samples drawn according to Robertson v. State, 604 So. 2d 783 (Fla. 1992) [which validated the three-part common law test for admissibility as articulated in State v. Bender, 382 So. 2d 697, 699 (Fla. 1980)]. The fact-finder would then resolve the contested issues." Id. at 951 n.1.

The trial court in Petitioner's case followed this procedure in the admission of Petitioner's blood alcohol test result. The testimony presented by the State's expert (doc. 6, ex. E, pp. 195-215) satisfied the common law predicate for admission of the blood test result by showing that "(1) the test was reliable, (2) the test was performed by a qualified operator with the proper equipment and (3) expert testimony was presented concerning the meaning of the test." State v. Bender, 382 So. 2d 697, 699 (Fla. 1980). Thus, even if Petitioner's trial attorney sought to suppress the blood test result based on the argument raised in Miles, he was unlikely to succeed because the blood test was nevertheless admissible under the common law method.

As for the presumption of impairment, the First District Court of Appeal ruled in State v. Miles, 732 So. 2d 350, 353 (Fla. 1st Dist. Ct. App. 1999) that the presumption of impairment was still applicable even if a blood test result was admitted through the common law method. Although the Florida Supreme Court later quashed that portion of the First District's ruling, Miles, 775 So. 2d at 957, Petitioner's trial counsel cannot be faulted for acting in a manner consistent with

the First District's initial ruling.

As stated above, failure to anticipate a change in the law does not constitute ineffective assistance of counsel, even when the change can be anticipated. Ardley, 273 F.3d at 993.  "Further, the rule that it is not ineffective assistance for an attorney to fail to foresee a change in the law applies even when the change is such that the forfeited issue was, in hindsight, a sure fire winner." Id.  The issue that Petitioner claims his trial attorney should have raised in October of 1997 was nowhere near a sure fire winner.  Most likely, had the attorney raised the issue, the blood test result would still have been admitted into evidence through the common law manner, just as it had been in Miles.  Furthermore, based on the initial position of the First District Court of Appeal the presumption of impairment would have applied.  Accordingly, Petitioner has failed to show that his trial attorney was ineffective as to this issue.  His claim should therefore be denied.

    **2.**    **Juror Conduct**

Respondent objects to the magistrate judge's recommendation to grant relief on Petitioner's claim that his trial attorney rendered ineffective assistance of counsel by failing to inform the trial judge of communication made by a juror to Petitioner's family.  For the following reasons, Respondent's objection will be sustained and no relief will be ordered as to this ground.

The description of the communication in the petition itself is generic.  It

states only that (1) verbal contact was made by a juror to members of Petitioner's family and (2) Petitioner's trial attorney was made aware of the contact immediately after it happened but failed to inform the trial judge.  In a Florida Bar complaint made by Susanne Williams, which the state trial judge attached to his order denying postconviction relief, the contact is described in more detail.

> After the jury was seated at one point during a break a black female juror came over to where we were standing and asked [Petitioner's] parents if he was their son.  Then she said, "I know how it feels, my boy is in prison.  You folks got nothing to worry about." [Petitioner's] father related this incident to [trial counsel] immediately.  And on another occasion she started to talk to us, but this time a bailiff caught her and [told] her to move on and not speak to the principals in the trial.

Doc. 6, ex. P, The Florida Bar Inquiry/Complaint Form, p.6.

In recommending that Petitioner be granted relief on this claim, the magistrate judge credited as true Petitioner's allegation that a juror made statements to Petitioner's family and the allegation that Petitioner's family immediately advised the trial attorney.  The magistrate judge then concluded that Petitioner's trial attorney's "unilateral decision to deprive the trial court of the opportunity to exercise a gate-keeping function of this magnitude led to a different outcome in the sense that there is a reasonable probability that, at the very least, the juror would have been replaced with the alternate, and, thus, a different jury with different dynamics would have considered and debated the evidence before rendering its verdict."  Doc. 8, at p. 27.  The magistrate judge concluded that the outcome of the trial was rendered "fundamentally unreliable,

thereby establishing prejudice." Id.

In the objection to the report and recommendation, Respondent argues that the magistrate judge erred in accepting Petitioner's allegations and granting relief without first conducting an evidentiary hearing. Respondent also argues that the magistrate judge erred in presuming prejudice. The Court agrees with Respondent's objections.

As an initial matter, Petitioner has not yet established that the juror made the communication and that the trial attorney was made aware of it. Moreover, Petitioner's trial attorney has not had the opportunity to explain whether he had strategic reasons for failing to disclose the communication to the trial judge. Given the sympathetic tone of the alleged communication, it is at least conceivable that the trial attorney made a strategic decision not to disclose the communication because he believed that the juror was inclined to render a verdict in favor of Petitioner.

As noted by the magistrate judge, failure to disclose the communication to the trial judge may have constituted a breach of the trial attorney's duty to the court. Nevertheless, the trial attorney may have been acting in accordance with Petitioner's best interests. "If counsel breaches a duty *to the court*, this does not necessarily mean that the representation of *his client* was ineffective." Government of the Virgin Islands v. Weatherwax, 77 F.3d 1425, 1438 (3d Cir. 1996) (attorney's strategic decision not to disclose to trial judge the fact that a

juror had a newspaper containing an article about the trial did not constitute deficient performance).

More importantly, even if Petitioner could show that the juror made the statement and that Petitioner's trial attorney had no valid reason for failing to inform the trial judge, Petitioner cannot demonstrate that the juror's statement constitutes prejudice under the Strickland test. A claim of ineffective assistance of counsel is governed by the Strickland test, which has a deficient performance component and a prejudice component. Strickland v. Washington, 466 U.S. 668, 687-89 (1984). Prejudice under Strickland is different from the "'harmless error' standard of Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d. 353 (1993), under which certain types of 'structural' errors are *per se* prejudicial." Jackson v. Herring, 42 F.3d 1350, 1361 (11th Cir. 1995). Instead, to establish prejudice under Strickland, a defendant must show that but for counsel's deficient performance, the outcome of the proceedings probably would have been different. Strickland, 466 U.S. at 687-89.[3]

---

[3] In certain contexts, prejudice under Strickland can be presumed. But the contexts are limited to egregious cases. For example, if defense counsel is absent at a critical stage of the proceedings or fails to challenge the prosecutor's case, prejudice is presumed. United States v. Cronic, 466 U.S. 648, 659-60 (1984). If defense counsel fails to file a notice of appeal, prejudice is presumed. Lozada v. Deeds, 498 U.S. 430, 432 (1991). If defense counsel operates under an actual conflict of interest that has an adverse affect on his performance, prejudice is presumed. Cuyler v. Sullivan, 446 U.S. 335, 349-50 (1980). Other than these contexts, however, prejudice under the Strickland is required. Petitioner has not identified any cases where in circumstances similar to his prejudice was presumed.

Even when, as in this case, the alleged deficient performance is the failure to raise and preserve an issue concerning the make-up of the jury, it is not enough to show that the attorney would have prevailed on the issue had he raised it. Jackson, 42 F.3d at 1361 n.9 (prejudice not met by showing attorney would have prevailed on Swain[4] claim). A showing must be made that a jury of the proper make-up would likely have acquitted the Petitioner or found him guilty of a lesser charge. Id. at 1362.

In this case, Petitioner does not even allege prejudice under the Strickland standard. Instead, Petitioner alleges that "[d]ue to the failure of counsel to relay information concerning juror misconduct, petitioner Williams was deprived of an on-the-record inquiry to determine whether manifest necessity required declaration of a mistrial." Doc. 1, at p. 31. Deprivation of an inquiry does not constitute Strickland prejudice. Moreover, even if the trial court had the opportunity to make an inquiry, it is doubtful that a mistrial would have been granted.

Contrary to the argument made by Petitioner, not all reports of juror misconduct require the declaration of a mistrial. The case Petitioner relied upon, Lebron v. State, 799 So. 2d 997, 1013-14 (Fla. 2001), involved the failure of a juror to disclose during voir dire information that was relevant and material to jury service. This case does not involve information that is relevant and material to

---

[4] Swain v. Alabama, 380 U.S. 202 (1965) (concerning race-based peremptory challenges).

jury service.

Instead, the alleged remark by the juror was an expression of sympathy and reassurance to Petitioner's family, and did not directly address the matters being tried. Thus even if the juror made the remark, it is not entirely clear whether the juror would have been dismissed from the jury, and it is doubtful that a mistrial would have been declared.

In Jones v. State, the Florida Supreme Court found that the trial court did not abuse its discretion in refusing to grant a mistrial when one of the jurors talked to the daughter of the murder victim, with whom she was acquainted. Jones v. State, 411 So. 2d 165, 167 (Fla. 1982). Although Jones was a capital case, the court noted that the communication "did not directly relate to the matters being tried, and certainly did not prejudice the defendant's right to a fair trial." Id. The court also noted that the acquaintance between the juror and the daughter of the murder victim was "distant and superficial." Id.

In another case, the Florida Supreme Court found no error in the trial judge's refusal to grant a mistrial when, during a recess in a capital case, an unidentified juror happened to see the defense attorney and stated, "Good luck. You're going to need it." Doyle v. State, 460 So. 2d 353, 356-57 (Fla. 1985). The trial judge gave the jury a curative instruction, which was deemed satisfactory. The court found no abuse of discretion in the trial court's refusal to grant a mistrial, nor in its handling of the juror. Id.

Had Petitioner's attorney raised the issue of the juror's alleged remark with the trial judge, it is likely that the matter would have been handled similarly to <u>Jones</u> and <u>Doyle</u>. The communication allegedly made by the juror was brief. The juror expressed no hostility to Petitioner nor his family. A cautionary instruction probably would have sufficed.

Based on the foregoing, the Court finds no reasonable probability that the outcome of the trial would have been different had Petitioner's trial attorney alerted the trial judge about the juror's communication with Petitioner's family. Accordingly, relief as to this ground should be denied.

Having found no grounds upon which to grant relief to Petitioner, it is

ORDERED AND ADJUDGED:

1. The magistrate judge's report and recommendation (doc. 1) is adopted and incorporated by reference as to the denial of the blood alcohol evidence claim. As for the juror conduct claim, the Court finds for reasons stated in this order that Petitioner is not entitled to relief.

2. The petition for writ of habeas corpus (doc. 1) is denied.

DONE AND ORDERED this 29th day of September, 2006.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge